IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE COUNTY, PENNSYLVANIA, : <br> RECORDER OR DEEDS, : <br> : <br> Plaintiff : <br> : <br> v. : <br> : <br> MERSCORP, INC., et al., : <br> : <br> Defendants : | CIVIL ACTION NO.: <br><br> 2:13-CV-6517-CDJ |

**MEMORANDUM**

**Judge C. Darnell Jones, II**                                                              September 15, 2014

Pending before the court is a motion to remand filed by plaintiff, (Doc. No. 42) which, as discussed further below, requires the court to consider whether to permit joinder of defendant Customers Bancorp. After a thorough review of the record, the court will permit joinder and remand to the Court of Common Pleas, Delaware County.

**BACKGROUND**

Because plaintiff's motion to remand raises a primarily procedural issue, the court will only briefly recount the facts of this case. MERSCORP is a privately held company formed in 1995 by constituents of the mortgage-lending industry. (Am. Compl. at ¶28.) In 1998, it incorporated MERS to "serve[] as nominee for beneficial owners of mortgage loans." (*Id.* at ¶30.) MERSCORP also developed the MERS® system, a "national electronic registry" for registering and transferring mortgage interests. (*Id.* at ¶3.) MERS members

(financial institutions that pay an annual membership fee)[1] are able to utilize the MERS® system to track beneficial interests in mortgages recorded in the MERS system.

The internal workings of MERS are relatively simple. When a MERS member obtains a financial interest in a mortgage instrument, the interest is recorded as "MERS" in local land records. (*Id.* at ¶50.) Any subsequent transfer of that interest to other MERS members is only recorded in the MERS system. (*Id.* at ¶¶48, 51, 52, 53.) In fact, MERS prohibits its members from publicly recording any assignments amongst MERS members.[2] (*Id.* at ¶57.) As plaintiff explains:

> Once MERS becomes the beneficiary of record as nominee, it remains such when beneficial ownership interest in the promissory note or servicing rights are transferred by one MERS Member to another, and it tracks such transfers electronically on the MERS® System. As long as the sale of the note involves a member of MERS, MERS remains the beneficiary of record on the deed of trust and continues to act as nominee for the new beneficial owner. If a member is no longer involved with the loan after it is sold, an assignment of the lien from MERS to the non-MERS member is recorded in the county where the real properly is located and the mortgage loan is deactivated from the MERS® System.

(*Id.* at ¶52.)

Access to the MERS system is restricted to members, so nonmembers are unable to determine which MERS member is the actual beneficial owner of any given mortgage interest. (*Id.* at ¶32) In other words, the only transaction that is visible to members of the

---

[1] In addition to the membership fee, MERS charges an initial fee of $11.95 to register a loan on the MERS® system and $2.50 for transfers between MERS members. (Am. Compl. at ¶33.)

[2] MERS's Rules of Membership states:

> At the request of the beneficial owner of a mortgage loan, or any designee thereof as shown on the MERS System, MERS shall provide to such beneficial owner or designee a recordable assignment for such mortgage loan to another party designated by the beneficial owner or designee; provided however, that such beneficial owner or designee shall warrant to MERS that such assignment shall be promptly recorded. Requests for recordable assignments may be made only for purposes of deactivating a mortgage loan from the MERS system.

(Am. Compl. at ¶57.)

public is the initial induction into the MERS system; after that, all subsequent transactions amongst MERS members are conducted behind the MERS "curtain."[3] (*Id.* at ¶¶48, 51, 52, 53.) MERS remains a proxy in the public land records for the true beneficiary as long as the mortgage interest is held by a MERS member. (*Id.*)[4] Therefore, the MERS system allegedly "creat[es] gaps in the chain of title and depriv[es] county recorders of the requisite funds, in the form of recording fees, to protect the integrity of the public resource." (*Id.* at ¶47.)

On October 11, 2013, plaintiff filed a complaint in the Court of Common Pleas, Delaware County, alleging violations of 21 P.S. § 351, Pennsylvania's recording statute.[5]

---

[3] In fact, plaintiff alleges that MERS itself does not track the beneficial owner of mortgage interests recorded in the MERS® system. (Am. Compl. at ¶66.) The complaint states, "[i]nformation on the system is updated only if MERS members choose to do so." (*Id.*) Furthermore, MERS disclaims liability for the accuracy of information:

> DISCLAIMER: MERS makes no representations or warranties regarding the accuracy or reliability of the information provided. MERS disclaims responsibility or liability for errors, omissions, and the accuracy of any information provided. MERS does not input any of the information found on the MERS® System, but rather the MERS Members have that responsibility regarding mortgage loans in which they hold an interest.

(Am. Compl. at ¶67.)

[4] The MERS Membership Agreement states:

> The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

(Am. Compl. at ¶50.)

[5] Pennsylvania's recording statute provides:

> [a]ll deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth . . . shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate.

(Doc. No. 1.) It appears from the original complaint as though plaintiff was under the impression that one of the named defendants, Sovereign Bank, was a citizen of Pennsylvania.[6] (Compl. at 9.) On November 8, 2013, defendants removed the case from state court after showing that Sovereign Bank was no longer a Pennsylvania citizen, thereby demonstrating complete diversity of the parties. (Doc. No. 1.) On December 17, 2013, defendants filed a motion to dismiss. (Doc. No. 36.) Plaintiff responded by filing an amended complaint on January 7, 2014, apparently under Federal Rule of Civil Procedure 15(a)(1)(B). (Doc. No. 41.) The amended complaint added a non-diverse party – Customers Bancorp – as well as a claim for quiet title and additional allegations supporting plaintiff's remaining claims. (*Id.*) One day later, plaintiff moved to have this matter remanded to state court. (Doc. No. 42.)

## DISCUSSION

As an initial matter, it is worth clarifying the procedural posture of plaintiff's motion. Plaintiff filed an amended complaint prior to filing the present motion to remand, which would normally be permitted without leave of court because it was filed within 21 days of service of defendant's motion to dismiss. Fed. R. Civ. P. 15(a)(1). However, because the amendment would ultimately divest this court of jurisdiction, the court must first decide whether to permit joinder of the proposed non-diverse party. 28 U.S.C. § 1447(e) ("[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").

---

21 P.S. § 351.
[6] The complaint states, "Sovereign Bank ('Sovereign') is a national banking association with its principal place of business at 1130 Berkshire Boulevard, Wyomissing, Pennsylvania 19610-1242." (Compl. at ¶23.)

While the Third Circuit has yet to speak on the matter, courts in this district have analyzed four factors – collectively known as the Hensgens factors – to determine whether to permit joinder. *John Doe #4 v. Soc'y for Creative Anachronism, Inc.*, No. 07-CV-1439, 2007 WL 2155553, *3 (E.D. Pa. July 25, 2007) (citing *Hensgens v. Deere, Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)). These factors are, "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities." *Id.* (citation omitted). The purpose of the Hensgens factors is "to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." *Stewart v. Wal-Mart Distribution Center*, No. 12-CV-4958, 2013 WL 1482217, *2 (E.D. Pa. April 11, 2013) (internal quotations omitted). The court will address each factor in turn.

### I.  The Purpose for the Joinder Was Not to Defeat Jurisdiction

Plaintiff's purpose in amending the complaint does not appear to be solely or even primarily to obtain remand to state court. Plaintiff has represented to this court on the record that it expects to add a number of Pennsylvania banks to this lawsuit, and the nature of this case corroborates this expectation. Both the original complaint and the amended complaint contain causes of action against MERS and its member banks. According to plaintiff, thousands of banks are members of the MERS system, which makes it highly likely that a number Pennsylvania banks use the MERS system to conduct business in Delaware County. Furthermore, as the parties have conceded, plaintiff's original complaint named Sovereign Bank, a party that plaintiff believed to be a Pennsylvania citizen. (Compl. at 9.) Of course, defendants dispelled the notion that Sovereign was a Pennsylvania bank and

removed the case to federal court, but the amended complaint added another Pennsylvania bank – Customers Bancorp. Defendant does not seriously contend that plaintiff could not have included Customers Bancorp to its initial complaint while this case was in state court, thereby preventing its removal in the first place. In sum, it appears that, while this matter will ultimately include a large number of Pennsylvania entities, plaintiff initially included only one Pennsylvania bank as a placeholder in the expectation of adding many more after preliminary discovery revealed their identities. The addition of Customers Bancorp at this stage is more indicative of a correction to the complaint than it is a bald-faced attempt to destroy federal jurisdiction. That the natural consequence of that correction is remand does not automatically establish the inference that the amendment was made to destroy jurisdiction.

Of course, defendants question why plaintiff failed to simply name Customers Bancorp in the initial complaint. Much ink has been spilled over this question. Plaintiff initially insisted that it did not know about Customers Bancorp at the time it filed its initial complaint because the bank's transactions were cloaked by the "curtain" of MERS. (Pl's Reply Brief at 7-10.) It then conceded, "[w]ell, arguably, there is the argument that we were able to identify them, and arguably, add them . . ." (Tr. at 11.) Regardless, the issue is not dispositive of the present motion. Plaintiff is the master of its own complaint and chose to name only one Pennsylvania bank in its initial complaint with the intention of naming more after discovery revealed the identify of further MERS members. In the meantime, it identified the unnamed defendants only as "John Doe Defendants, 1-100," a practice permitted in the Third Circuit. *Hindes v. F.D.I.C.*, 137 F.3d 148, 155-56 (3d Cir. 1998).

Defendant suggests that the temporal proximity between the filing of the amended complaint and the motion to remand demonstrates that plaintiff's true purpose for the amendment was solely to divest this court of jurisdiction in this matter. A review of the record shows that plaintiff filed its amended complaint on January 7, 2014, and the present motion to remand on January 8, 2014, one day later. Nonetheless, defendants point to no case law in this Circuit holding that such a small temporal gap indicates improper motive, nor is the court convinced that it is wise to adopt such logic in this case. Such a presumption, without supporting evidence of a party's intention, could have the effect of discouraging timely motions for remand, thereby resulting in wasted judicial resources. It would also contradict the second Hensgens factor, which aims to reduce dilatory tactics. In sum, the court believes that plaintiff's intention was primarily to correct its complaint, not to destroy federal jurisdiction.

**II.     Amendment Was Not Dilatory**

The record demonstrates that defendants removed this case to federal court on November 8, 2013, and that plaintiff filed an amended complaint and motion to remand on January 7 and January 8, 2014, respectively. Therefore, approximately two months passed between removal and amendment. Defendants argue that this delay was dilatory, noting that plaintiff waited until after it had filed a lengthy motion to dismiss on December 17, 2013. (Def's Opp. Br. at 16.) Defendant also claims that plaintiff failed to file its amendment within the 30-day period set forth in 28 U.S.C. §1447. (Tr. at 18; Def's Opp. Br. at 4.) Plaintiff rebuts defendants' arguments, explaining that it took two months to amend the complaint because it added a new cause of action and additional allegations in response to several issues raised in defendants' motion. (Tr. at 13.)

The court believes that a two month delay was not dilatory under these circumstances. As plaintiff explains, the amended complaint did more than add a new party; rather, it added a cause of action for quiet title and a number of allegations in support of its aiding and abetting claim. Moreover, defendants' argument that plaintiff waited until they filed a motion to dismiss is not convincing because the federal rules expressly permit parties to amend their complaint as of right within twenty-one days of the filing of a motion under Rule 12(b)(6). Therefore, post-motion amendments like plaintiff's are not as rare as defendant would have the court believe. Finally, defendants' argument that plaintiff did not amend within a thirty day period is inapposite. It is true that 28 U.S.C. §1447 provides a thirty day period for amendment. However, it is evident from the face of the statute that this provision does not apply to motions to remand on the basis of lack of subject matter jurisdiction, which is precisely the basis for remand here. In fact, §1447(c) expressly allows motions to remand on the basis of lack of subject matter jurisdiction at any time during the pendency of a case in federal court:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). *If at any time before final judgment* it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. §1447(c) (emphasis added).

In sum, plaintiff's amended complaint was not dilatory.

### III. Plaintiff Will Suffer Prejudice If This Matter Is Not Remanded

The parties agree that it is likely that at least one Pennsylvania bank utilized the MERS system to dispose of a mortgage interest in Delaware County during the relevant time period. If the court denies joinder, plaintiff will be forced to litigate two parallel cases:

one in federal court and one in state court. The court believes this burden is sufficiently prejudicial by itself to weigh in favor of joinder. *Kahhan v. Massachusetts Cas. Ins. Co.*, No. 01-CIV-1128, 2001 WL 1454063, *2 (E.D. Pa. Nov. 14, 2001).

### IV. Other Equitable Considerations

There is some implication that defendant will be prejudiced if the court permits joinder, particularly because it has already filed a lengthy motion to dismiss. As stated above, it is not uncommon for motions to be mooted by an amended complaint. As such, the court believes defendant's prejudice argument is insufficient to tip the balance in favor of denying joinder.

Finally, denying joinder would result in parallel lawsuits, one in the Court of Common Pleas, Delaware County and one in the U.S. District Court for the Eastern District of Pennsylvania. To the extent parallel actions have the potential to burden the parties, the court has already opined on the matter. However, denying joinder would also waste judicial resources at both the state and federal level. This is certainly a factor to be considered in deciding the joinder issue, (*see Kahhan v. Massachusetts Cas. Ins. Co.*, No. 01-CIV-1128, 2001 WL 1454063, *3 (E.D. Pa. Nov. 14, 2001)), and weighs in favor of permitting joinder.

### CONCLUSION

After thoroughly considering the parties' respective briefs and the transcript of oral argument, the court has determined that all of the Hensgens factors weigh in favor of permitting plaintiff to amend the complaint to join Customers Bancorp as a defendant. Moreover, because the parties concede that joinder would destroy complete diversity of citizenship, this court no longer has jurisdiction to hear this matter. As such, it is hereby

9

**ORDERED** that this case is **REMANDED** to the Court of Common Pleas, Delaware County for further proceedings.

                              **BY THE COURT:**

                              **/s/ C. Darnell Jones, II   J.**
                              **C. DARNELL JONES, II   J.**